FILED

2018 Oct-17  PM 05:18
U.S. DISTRICT COURT
N.D. OF ALABAMA



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| MELVIN GROSS, On Behalf of Himself and All Others Similarly Situated, | ) ) | Case No. |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | **CLASS ACTION COMPLAINT** |
|  | ) |  |
| ENERGEN CORPORATION, JONATHAN Z. COHEN, KENNETH W. DEWEY, M. JAMES GORRIE, JAY GRINNEY, WILLIAM G. HARGETT, FRANCES POWELL HAWES, VINCENT J. INTRIERI, ALAN A. KLEIER, LORI A. LANCASTER, and JAMES T. MCMANUS, II, | ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
|  | ) |  |
| Defendants, | ) ) |  |

Plaintiff Melvin Gross ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Energen Corporation ("Energen" or the "Company") against Energen and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Energen will be acquired by Diamondback Energy, Inc. ("Diamondback") through Diamondback's wholly-owned subsidiary

Sidewinder Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2.    On August 14, 2018, Energen and Diamondback issued a joint press release announcing they had entered into an Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Energen stockholders will be entitled to receive 0.6442 of a share of Diamondback common stock per Energen common share (the "Merger Consideration").  The Proposed Transaction is valued at approximately $9.2 billion.

3.    On September 13, 2018, Diamondback and Energen filed a joint proxy statement/prospectus on Form S-4 (as amended on October 11, 2018, the "Registration Statement") with the SEC.  The Registration Statement, which recommends that Energen stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Energen's and Diamondback's financial projections, relied upon by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Tudor Pickering Holt & Co Advisors LP ("TPH") in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by J.P. Morgan and TPH; (iii) the background process leading to the Proposed Transaction; and (iv) Energen insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Energen stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.    In short, unless remedied, Energen's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the

stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Energen is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Energen common stock.

9.      Energen is an Alabama corporation and maintains its principal executive offices at 605 Richard Arrington Jr. Boulevard North, Birmingham, Alabama 35203.  Energen is an oil-focused exploration and production company.  The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "EGN."

10.     Defendant Jonathan Z. Cohen ("Cohen") has been a director of the Company since March 2018.

11.     Defendant Kenneth W. Dewey ("Dewey") has been a director of the Company since 2007.

12.     Defendant M. James Gorrie ("Gorrie") has been a director of the Company since 2014.

13.     Defendant Jay Grinney ("Grinney") has been a director of the Company since 2012.

14.     Defendant William G. Hargett ("Hargett") has been a director of the Company since 2015.

15.     Defendant Frances Powell Hawes ("Hawes") has been a director of the Company since 2013.

16.     Defendant Vincent J. Intrieri ("Intrieri") has been a director of the Company since March 2018.

17.     Defendant Alan A. Kleier ("Kleier") has been a director of the Company since 2015.

18.     Defendant Lori A. Lancaster ("Lancaster") has been a director of the Company since 2017.

19.     Defendant James T. McManus, II ("McManus") has been Chief Executive Officer ("CEO") of the Company since July 2007, Chairman of the Board since January 2008, and a director of the Company since 2006.  Defendant McManus has held various positions with Energen and its subsidiaries since 1986.

4

20.     The defendants identified in paragraphs 10-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.     Diamondback is a Delaware corporation, with its principal executive offices located at 500 West Texas, Suite 1210, Midland, Texas 79701.  Diamondback is an independent oil and natural gas company engaged in the acquisition, development, exploration and exploitation of onshore oil and natural gas reserves in the Permian Basin.  Diamondback's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "FANG."

22.     Merger Sub is an Alabama corporation and a direct wholly-owned subsidiary of Diamondback.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Energen common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.  The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of August 13, 2018, there were 97,559,685 shares of Energen common stock outstanding.  All members of the Class may be identified from records maintained by Energen or its transfer agent

and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

25.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

26.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

27.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and Sale Process

29.     Energen is an oil and natural gas company engaged in the exploration, development and production of oil, natural gas liquids and natural gas.  The Company's operations

6

occur in the Permian Basin and are conducted through Energen's subsidiary, Energen Resources Corporation ("Energen Resources"). Energen's operations focus on increasing production and adding proved reserves through the development of oil, natural gas liquids and natural gas properties. At the end of 2017, the Company's proved reserves totaled 444 million barrels of oil equivalent ("MMBOE").

30.     On May 8, 2018, Energen announced its first quarter 2018 financial results. For the quarter, the Company produced 97.4 thousand barrels of oil equivalent per day ("MBOED"), exceeding its guidance midpoint by 4%. Adjusted EBITDAX was $240.6 million, exceeding internal expectations by approximately 10%, compared to adjusted EBITDAX of $95.6 million in the first quarter of 2017. Defendant McManus commented on Energen's financial results, noting:

> In the first quarter of 2018, Energen built on the strong execution, growth, and financial strength it demonstrated in 2017. . . . Our Generation 3 completions continued to drive production outperformance and, in combination with execution excellence, resulted in wells being placed on production earlier than planned. Additionally, our first Gen 3 completions on two Cline wells in different areas of the Midland Basin are delivering exciting results.
>
> We are pleased to report that we have all of the rigs and services lined up to execute on our 2018 drilling and development plans. We have strong arrangements in place to provide flow assurance for our oil and gas production. And we have high-quality, oil-focused assets with attractive rates of return and an outstanding balance sheet. . . . In short, we are extremely pleased with our performance in the quarter and confident that Energen is well-positioned to continue delivering strong results and creating shareholder value.

31.     Energen's financial success continued with Energen announcing strong second quarter 2018 financial results on August 7, 2018. Notably, the Company's production of 97.4 MBOED exceeded guidance midpoint by 7% and the top end of guidance range by 3%. Energen increased production guidance for the third and fourth quarters of 2018 by 6.5% and 4%, respectively. The Company's adjusted EBITDAX for the quarter was $244.8 million, exceeding internal expectations by approximately 11%, and compared to adjusted EBITDAX of $142.2

million in the second quarter of 2017. Defendant McManus commented on the quarter's financial results, stating:

> In the second quarter of 2018, Energen continued to build on its track record of execution, growth, and financial strength. . . . Wells completed with our Generation 3 frac design drove a 7 percent production beat to our guidance midpoint; and with three more months of outperformance and solid execution in hand, we are very pleased to be raising our estimated production targets for the remainder of 2018.
>
> At the midpoint of our new guidance range for 2018, Energen will reach a milestone by producing more than 100,000 boe per day for the first time in company history. . . . Our hedge program helps mitigate the negative impact of a temporary widening of basis differentials, and we have solid arrangements in place to provide flow assurance for our oil and gas production. These factors, together with the rigs and services we need in place, will allow us to continue focusing on execution as we implement our robust drilling and development plans.
>
> In short, we are extremely pleased with our performance in the quarter and confident that Energen is well-positioned to continue delivering strong results and creating shareholder value. . . .

32.     Following pressure from activist investor Corvex Management LP ("Corvex"), at a March 6, 2018 meeting, the Board determined to conduct a review of the Company's business plans and potential strategic alternatives.

33.     On June 5, 2018, the Board authorized Company management and the Company's financial advisors to contact other companies in the industry regarding a strategic combination with Energen. Following this outreach, three companies including Diamondback and oil and gas companies referred to in the Registration Statement as "Company A" and "Company B", entered into non-disclosure agreements ("NDAs") with Energen. The Registration Statement fails to disclose whether these NDAs include standstill provisions that are still in effect and operate to preclude these parties from submitting topping bids for the Company.

34.     On August 1, 2018, Diamondback submitted a proposal to acquire the Company for $85 per share in an all-stock transaction, which implied an exchange ratio of 0.6442 of a

Diamondback share per Energen share.

35.    On August 14, 2018, J.P. Morgan and TPH each rendered their fairness opinions. The Board then approved the Merger Agreement.  That afternoon, Energen and Diamondback finalized and executed the Merger Agreement.

**The Proposed Transaction**

36.    On August 14, 2018, Diamondback and Energen issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

MIDLAND, Texas --Aug. 14, 2018-- Diamondback Energy, Inc. (NASDAQ: FANG) ("Diamondback" or the "Company") and Energen Corporation (NYSE: EGN) or ("Energen"), today announced that they have entered into a definitive agreement under which Diamondback will acquire Energen in an all-stock transaction valued at approximately $9.2 billion, including Energen's net debt of $830 million as of June 30, 2018. The consideration will consist of 0.6442 shares of Diamondback common stock for each share of Energen common stock, representing an implied value to each Energen shareholder of $84.95 per share based on the closing price of Diamondback common stock on August 13, 2018. The transaction was unanimously approved by the Board of Directors of each company.

\* \* \*

 "This transaction represents a transformational moment for both Diamondback and Energen shareholders as they are set to benefit from owning the premier large cap Permian independent with industry leading production growth, operating efficiency, margins and capital productivity supporting an increasing capital return program. The Energen team has done an outstanding job assembling a portfolio of Tier One acreage in both the Midland and Delaware basins, which, when combined with Diamondback's current portfolio, will present an extended runway for Diamondback's record of best-in-class execution and low-cost operations. This transaction also adds critical mass for driving capital efficiencies in what is now truly becoming a manufacturing business. I expect the pro forma company to be able to grow at industry leading rates while returning capital at a competitive yield," stated Travis Stice, Chief Executive Officer of Diamondback.

Mr. Stice continued, "We look forward to welcoming Energen's employees as members of the Diamondback team, and applaud them for the hard work and dedication they have put forth to create this opportunity for the two teams to become one. The synergies provided in this transaction, as well as the opportunities for capital improvements provided by increased size and scale, create a truly outstanding value proposition. The combined company's expected production

growth, capital productivity and cost structure will enhance our free cash flow profile to grow our long-term capital return program."

James McManus, Chairman and Chief Executive Officer of Energen, stated, "We are very pleased about this transaction and believe the combination of the two companies' quality assets, track record of execution, and peer-leading cost structures will form an even stronger, large-cap independent producer uniquely positioned to drive growth and development in the Permian Basin. This transaction is the outcome of a comprehensive strategic review by Energen's Board with the assistance of our outside advisors. The process examined our business plan, competitive positioning, and strategic alternatives. We believe this all-stock transaction with Diamondback is the best path forward for our company and provides Energen shareholders with an excellent value for their investment, now and in the future."

Mr. McManus added, "I also want to take this opportunity to recognize Energen's biggest strength, our employees, and publicly thank them for their dedication and hard work in driving Energen's success."

**TRANSACTION DETAILS**

Under the terms of the definitive merger agreement, shareholders of Energen will receive 0.6442 shares of Diamondback common stock in exchange for each share of Energen common stock, representing an implied value to each Energen shareholder of $84.95 per share based on the closing price of Diamondback common stock on August 13, 2018. The consideration represents an approximately 19% premium to Energen's closing price of $71.36 on August 13, 2018. Upon closing the transaction, Diamondback shareholders will own approximately 62% of the combined company, and Energen shareholders will own approximately 38%. The resulting capital structure is consistent with Diamondback's strategy of maintaining a conservative financial profile and will accelerate the Company's path to an investment grade credit rating profile.

The transaction, which is expected to be completed by the end of the fourth quarter of 2018, is subject to the approval of both Diamondback and Energen shareholders, the satisfaction of certain regulatory approvals and other customary closing conditions.

Upon closing, Diamondback's Board of Directors and executive team will remain unchanged. Additionally, the Company will continue to be headquartered in Midland, Texas.

**Insiders' Interests in the Proposed Transaction**

37.     Energen insiders are the primary beneficiaries of the Proposed Transaction, not

the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Energen's public stockholders.

38.     Notably, it appears that certain Company insiders may have secured positions for themselves upon completion of the Proposed Transaction.  According to the joint press release announcing the Proposed Transaction, Diamondback CEO Travis Stice, is quoted as stating, "[w]e look forward to welcoming Energen's employees as members of the Diamondback team, and applaud them for the hard work and dedication they have put forth to create this opportunity for the two teams to become one."

39.     If they are terminated in connection with the Proposed Transaction, Energen's named executive officers stand to receive substantial cash severance payments, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Tax Reimbursement ($)(4) | Total ($) |
|---|---|---|---|---|---|
| *Named Executive Officers* | | | | | |
| James T. McManus, II | 8,114,860 | 20,144,562 | 38,422 | — | 28,297,844 |
| Charles W. Porter, Jr. | 3,735,249 | 11,829,524 | 46,846 | — | 15,611,619 |
| John S. Richardson | 4,115,436 | 9,044,676 | 37,615 | — | 13,197,727 |
| David A. Godsey | 1,962,830 | 3,208,711 | 37,319 | — | 5,208,860 |
| J. David Woodruff | — | 1,351,812 | — | — | 1,351,812 |

**The Registration Statement Contains Material Misstatements and Omissions**

40.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Energen's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

41.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading

11

information concerning: (i) Energen's and Diamondback's financial projections, relied upon by the Company's financial advisors, J.P. Morgan and TPH, in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by J.P. Morgan and TPH; (iii) the background process leading to the Proposed Transaction; and (iv) Energen insiders' potential conflicts of interest.  Accordingly, Energen stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Energen's and Diamondback's Financial Projections***

42.     The Registration Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

43.     First, the Registration Statement omits material information regarding Energen management's financial projections and the financial analyses performed by the Company's financial advisors J.P. Morgan and TPH.

44.     For example, in connection with J.P. Morgan's *Net Asset Value Analysis* ("NAV") for Energen, the Registration Statement states:

> J.P. Morgan calculated the present value, as of June 30, 2018, of unlevered free cash flows that Energen is expected to generate from the calendar year 2018 onward using the Energen forecasts and assuming (i) NYMEX strip pricing through 2022, with prices held flat thereafter (which we refer to as "Strip + LT Held Flat Pricing"), (ii) NYMEX strip pricing through 2022, with prices escalated at 3% per year thereafter with a cap of $60.00 per barrel of oil and $3.00 per million British thermal units (which we refer to as "Mmbtu") (which we refer to as "Strip + LT Escalation Pricing") and (iii) Wall Street consensus pricing (which we refer to as "Consensus Pricing"), which pricing assumptions were reviewed and authorized by Energen's management.

Registration Statement at 101.  The Registration Statement further sets forth:

> J.P. Morgan also calculated the present value, as of June 30, 2018, of unlevered free cash flows that Diamondback is expected to generate (excluding cash flows generated from Viper Energy Partners LP (which we refer to as "Viper") and Rattler

Midstream Partners LP (which we refer to as "Rattler") pipeline and Fasken Center office buildings in Midland, Texas where Diamondback's corporate offices are located (which we refer to as "Fasken") real estate assets, which were each valued separately, as described below) from the calendar year 2018 onward using the Diamondback forecasts and assuming (i) Strip + LT Held Flat Pricing, (ii) Strip + LT Escalation Pricing and (iii) Consensus Pricing, which pricing assumptions were reviewed and authorized by Energen's management.

*Id*. at 101-02.  Similarly, in connection with TPH's *Discounted Cash Flow Analyses* ("DCFs"), the Registration Statement states, "TPH performed separate discounted cash flow analyses of Energen and Diamondback by calculating the estimated present value as of June 30, 2018 of the standalone unlevered cash flows that Energen and Diamondback, in each case, were forecasted to generate." *Id*. at 110.   The Registration Statement fails, however, to disclose the Company's and Diamondback's unlevered free cash flows, including the definition of unlevered free cash flows and the line items used to calculate Energen's and Diamondback's unlevered free cash flows, utilized by J.P. Morgan in its respective NAV, and by TPH in its DCFs, for Energen and Diamondback.

45.     In addition, the Registration Statement sets forth that "TPH calculated the companies' terminal values by applying EBITDAX multiples . . . to each of Energen's and Diamondback's estimated 2023 EBITDAX, as set forth in the forecasts. . . ."  *Id*.  Yet, the Registration Statement fails to disclose each of Energen's and Diamondback's estimated 2023 EBITDAX utilized by TPH in its DCFs for Energen and Diamondback.

46.     Moreover, the Registration Statement states that, "[i]n arriving at its opinion, J.P. Morgan, among other things . . . reviewed . . . the estimated amount and timing of the cost savings and related expenses and synergies expected to result from the merger (which we refer to for the purposes of this section as the "Synergies"). . . ."  *Id*. at 94.  The Registration Statement also states that "[i]n connection with rendering its opinion, TPH reviewed, among other things . . . certain

synergies projected by the managements of Energen and Diamondback to result from the transactions (which we refer to for the purposes of this section as the "synergies")." *Id*. at 105-06. However, the Registration Statement wholly omits the synergies reviewed by each of J.P. Morgan and TPH in connection with the rendering of their fairness opinions.

47.     The omission of this information renders the statements in the "Opinion of J.P. Morgan, Energen's Financial Advisor," "Opinion of TPH, Energen's Financial Advisor," "Certain Energen Unaudited Prospective Financial Information," and "Certain Diamondback Unaudited Prospective Financial Information" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning J.P. Morgan's and TPH's Financial Analyses*

48.     The Registration Statement describes J.P. Morgan's and TPH's fairness opinions and the various valuation analyses performed in support of their opinions.   However, the description of J.P. Morgan's and TPH's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.   Without this information, as described below, Energen's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's and TPH's fairness opinions in determining whether to vote in favor of the Proposed Transaction.   This omitted information, if disclosed, would significantly alter the total mix of information available to Energen's stockholders.

49.     With respect to J.P. Morgan's NAV for Energen, the Registration Statement fails to disclose: (i) the unlevered free cash flows Energen is expected to generate from calendar year 2018 onward; (ii) quantification of the inputs and assumptions underlying the discount rate range of 9% to 11%; and (iii) quantification of the adjustments made by J.P. Morgan to the Company's

projected cash flows, including: (a) Energen's hedges, (b) projected general and administrative expenses, (c) projected cash taxes, (d) net debt as of June 30, 2018, and (e) stock appreciation rights, utilized by J.P. Morgan in its NAV.

50.     With respect to J.P. Morgan's NAV for Diamondback, the Registration Statement fails to disclose: (i) the unlevered free cash flows Diamondback is expected to generate from calendar year 2018 onward, (excluding cash flows generated from Viper Energy Partners LP ("Viper") and Rattler Midstream Partners LP ("Rattler") pipeline and Fasken Center office buildings in Midland, Texas real estate assets; (ii) quantification of the inputs and assumptions underlying the discount rate range of 8.50% to 10.50%; and (iii) quantification of the adjustments made by J.P. Morgan to Diamondback's projected cash flows, including: (a) Diamondback's hedges, (b) projected general and administrative expenses, (c) projected cash taxes, (d) the value of Rattler's pipeline and Fasken real estate assets, (d) the value of Viper's royalty cash flows, and (e) net debt as of June 30, 2018, utilized by J.P. Morgan in its NAV.

51.     With respect to TPH's DCFs of Energen and Diamondback, the Registration Statement fails to disclose: (i) the unlevered free cash flows that each of Energen and Diamondback were forecasted to generate; (ii) each of Energen's and Diamondback's estimated 2023 EBITDAX; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.0% to 10.0% utilized by TPH in its DCF of each company; (iv) the basis for applying EBITDAX multiples ranging from 5.00x to 7.00x in the case of Energen, and 7.00x to 9.00x in the case of Diamondback; (v) the value of Energen's and Diamondback's respective corporate items utilized by TPH in the analyses; and (vi) the perpetuity growth rates for each of Energen and Diamondback implied by the analyses.

52.     With respect to TPH's respective NAV of Energen and Diamondback, the Registration Statement fails to disclose: (i) Energen's and Diamondback's respective (a) cash flows generated by the estimated proved developed producing ("PDP") reserves and undeveloped resources, (b) future estimated effects of hedging, (c) with respect to Diamondback only, the value of Viper and Rattler net to diamondback's ownership interest in each entity, (d) future estimated effects of general and administrative expenses and taxes, (e) net debt, and (f) with respect to Energen, certain stock appreciation rights; and (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.0% to 10.0% utilized by TPH in the analysis.

53.     With respect to TPH's *Illustrative Discounted Future Value* analysis for the combined company pro forma for the merger, the Registration Statement fails to disclose: (i) projected pro forma EBITDAX including certain synergies; (ii) the value of pro forma corporate items; and (iii) quantification of the inputs and assumptions underlying the discount rate of 9.6%.

54.     With respect to J.P. Morgan's *Transaction Multiples Analysis*, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected transactions analyzed by J.P. Morgan in the analysis or, at a minimum, the high, low, mean and median multiples; and (ii) any benchmarking analyses for Energen in relation to the target companies analyzed by J.P. Morgan.

55.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

56.     The omission of this information renders the statements in the "Opinion of J.P. Morgan, Energen's Financial Advisor" and "Opinion of TPH, Energen's Financial Advisor"

sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

57.     The Registration Statement omits material information relating to the sale process leading up to the Proposed Transaction.

58.     In connection with Energen's outreach to potentially interested parties, the Registration Statement sets forth that:

> Of the companies contacted, three (all of which were among the top-tier potential counterparties) entered into non-disclosure agreements with Energen and were subsequently provided with certain non-public information, including Diamondback (which signed a non-disclosure agreement dated June 15, 2018), a second oil and gas company (which signed a non-disclosure agreement dated June 15, 2018, and is referred to as "Company A") and a third oil and gas company (which signed a non-disclosure agreement dated June 26, 2018, and is referred to as "Company B").

Registration Statement at 73.  Yet, the Registration Statement fails to disclose whether the NDAs Energen entered into with Company A and Company B include standstill provisions that are still in effect and/or contain "don't-ask-don't-waive" ("DADW") standstill provisions that are presently precluding either of these prospective bidders from making a topping bid for the Company.

59.     The disclosure of the terms of the standstill provisions in the confidentiality agreements Energen entered into with potential buyers is crucial to Energen stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

60.     The omission of this information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Energen Insiders' Potential Conflicts of Interest*

61.     The Registration Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's directors and executive officers.

62.     The August 14, 2018 joint press release announcing the Proposed Transaction quotes Travis Stice, CEO of Diamondback, as stating, "***We look forward to welcoming Energen's employees as members of the Diamondback team***, and applaud them for the hard work and dedication they have put forth to create this opportunity for the two teams to become one." Emphasis added.

63.     However, the Registration Statement fails to disclose whether any of Energen's officers have secured employment after completion of the Proposed Transaction.  The Registration Statement further fails to disclose the details of any employment-related discussions and negotiations that occurred between Diamondback and Energen executive officers, including who participated in all such communications, when they occurred, and their content, as well as whether any of Diamondback's prior proposals or indications of interest mentioned management retention or board membership in the combined company.

64.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

65.     The omission of this information renders the statements in the "Background of the Merger," "Board of Directors and Management of Diamondback Following Completion of the Merger," and "Interests of Energen Directors and Executive Officers in the Merger" sections of

the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

66.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

67.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

69.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company, the financial analyses performed by the Company's financial advisors, the sales process for the Company, and potential conflicts of interest faced by Company insiders.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

19

70.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.

71.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

72.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

73.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74.     The Individual Defendants acted as controlling persons of Energen within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Energen and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

75.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

76.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Registration Statement.

77.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

78.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

79.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated  thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Energen's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Energen, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Energen stockholders;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: October 17, 2018

Respectfully submitted,

/s/  *David J. Guin*

David J. Guin (ASB-3461-G67D)
Tammy M. Stokes (ASB-6084-K69T)
GUIN, STOKES & EVANS, LLC
300 Richard Arrington Jr. Blvd. North
Suite 600/Title Building
Birmingham, Alabama 35203
Tel: (205) 503-4505
Fax: (205) 226-2357
Email: davidg@gseattorneys.com
          tstokes@gseattorneys.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone:  (212) 308-5858
Facsimile:  (212) 214-0506
Email:  fortunato@bespc.com


**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL**.

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned certifies as follows:

1.     I have reviewed the complaint in this matter against Energen Corporation ("Energen") and others and authorized the filing thereof.

2.     I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in any private action.

3.     I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.     My transactions in Energen securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

5.     I have not sought to serve or served as a class representative under the federal securities laws in the last three years, other than as listed below (if any):

*In re Grupo Televisa Securities Litigation*, No. 1:18-cv-01979 (March 5, 2018)

6.     I will not accept any payment for serving as a representative party beyond the undersigned's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.

Dated: ~~September~~ 9, 2018
          October

_____
Melvin Gross

| Transaction (Purchase or Sale) | Trade Date | Quantity | Price per Share |
|---|---|---|---|
| Purchase | 8/18/16 | 25 shares | $56.792 |
| | | | |
| | | | |
| | | | |